## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                )
                                      )
CHRISTOPHER PAIGE and                 )
MICHELE PAIGE,                        )
                                      )   Case No. 3:17-cv-00023-MEM
          Debtors                     )   **FILED**
                                      )   **SCRANTON**
_____)
                                      )   JAN 1 7 2017
CHRISTOPHER PAIGE,                    )
MICHELE PAIGE,                        )
                                      )   PER _____ DEPUTY CLERK
                                      )
          Defendants/APPELLANTS)
                                      )
              vs.                     )
                                      )
LMF,                                  )   Case No. 5:11-bk-05957-JJT
MORGAN LEWIS, and                     )
JOHN GOODCHILD, ESQ.                  )   Adv. No. 12-ap-00067-JJT
                                      )
                                      )
          Plaintiff/APPELLEES         )
_____)

### APPELLANTS' AMENDED STATEMENT OF ISSUES FOR APPEAL

**COME NOW** the Appellants Christopher and Michele Paige, the Debtor-Defendants in the above-captioned adversary proceeding, pursuant to Rule 8009 of the Federal Rules of Bankruptcy Procedure to identify the issues in their appeal of the Order (Adv.Dkt. #350) entered by the United States Bankruptcy Court (the

"Bankruptcy Court") on December 29, 2016 and the other interlocutory Orders specified in our Notice of Appeal, filed herewith:

1.      Did the Bankruptcy Court err as a matter law, thereby abusing its discretion, when it held that motions for sanctions must be decided in a vacuum without regards to the particular facts of a particular case?  Is it, for example, reasonable to accuse President Barack Obama of racketeering because he enjoys a lifestyle far above his salary, travels in the company of armed men, and has been known to order his subordinates to kill people?   Likewise, was it reasonable for these Appellees to accuse us of serious torts and felonies based upon deficiencies in how I prepared *rough drafts* of documents actually corrected and finalized by the independent third-party administrator (accountant), auditor, and custodians who *actually* held and accounted for the Plaintiff's money?   In other words, is any theoretical doubt — no matter how impractical or remote — sufficient to justify *any* allegation against *anyone*, or must the court evaluate allegations in light of the *unique* facts of a particular case?   In short, were these Appellees obligated to investigate and assess their allegations *in light of the obvious and undisputed facts* prior to filing their Complaint (Adv.Dkt. #1)?   Should the Court have assessed their Complaints (Adv.Dkt. #1 & #81) on the "any conceivable" fact standard, or should the Court have assessed their Complaints based upon what they actually said and the obvious and undisputed facts?

2.     Did the Bankruptcy Court err as a matter of law, thereby abusing its discretion, when it ruled upon an imaginary motion challenging the legal sufficiency of the Appellees' claims (if true), rather than our *actual* Motions for Sanctions (hereinafter "our Motions") challenging the Appellees' corruption and dishonesty in their investigation and prosecution of their *false* claims?   Quite simply, our Motions alleged that these Appellees failed to investigate their allegations; prosecuted allegations they knew to be false; lied to attain an extension of the filing deadline; lied to prevent summary judgment; and lied to malign and defame us; our Motions did *not* allege that their 523 Claims (if true) were frivolous.   In short, was the Bankruptcy Court entitled to substitute its own arguments for ours? [To be clear, we are *NOT* arguing that the Bankruptcy Court had to explain its decision; rather, we are arguing that the Bankruptcy Court cannot proffer a patently-erroneous explanation.]

3.     Did the Bankruptcy Court err as a matter of law, thereby abusing its discretion, when it held that our Motions challenging the Appellees' subsequent pleadings had to be decided based solely upon the Appellees' knowledge at the time they filed their initial Complaint (Adv.Dkt. #1), or did the Third Circuit correctly hold that a non-movant's subsequent pleadings must be assessed based upon what the non-movant knew or *should have known* at the time of those subsequent pleadings?   For example, even if we were to assume these Appellees can claim they weren't aware of attorney-client privilege, were they allowed to sue

us on the off-chance that our attorneys might violate the law by revealing our privileged conversations, thereby substantiating their allegations that our attorneys fabricated my wife's contractual theories, and/or were they allowed to continue litigating that theory after they "learned" that we would *NOT* waive privilege? For another example, were they allowed to sue my wife on the off-chance that the New York State Bar's membership rolls are inaccurate and, thus, that my wife is an attorney despite those public records to the contrary? Were they allowed to sue me as a "legal architect," thereby circumventing the prohibition on suing me as an attorney? And what is a "legal architect"? When is an attorney acting as a "legal architect" and when is he acting as an attorney?

4.     Did the Bankruptcy Court err as a matter of law, thereby abusing its discretion, when it ignored the Trustee's warnings to the Appellees regarding the merits of their allegations as extrinsic evidence of what the Appellees *should have known* about the merits of their allegations?   In lay terms, were the Appellees entitled to ignore the Trustee's warning that they were "tilting at windmills" merely because they never bothered to pursue discovery and, thus, allegedly remained blissfully ignorant of the evidentiary basis for his warning that their allegations were delusional?

5.     Did the Bankruptcy Court err as a matter of law, thereby abusing its discretion, when it allowed the Appellees to speculate at great length regarding their knowledge and motives? Did he err when he allowed the Appellees' counsel

to "testify" about settlement offers that he never made, that he specifically refused, and which he expressly refused to consider as "evidence" of the Appellees' good-faith?   Likewise, if - as the Bankruptcy Court claims - there's some innocent explanation of the Appellees' threats to rape and sodomize my wife and/or of their decision to refer to me as a "faggot," then shouldn't we have heard that explanation from the witness stand, rather than through counsel's questions?  And shouldn't we have attained discovery regarding the Appellees' actual knowledge motives, or did the Bankruptcy Court correctly assume that such vile commentary is *NEVER* indicative of animus?  If so, how and why did the Bankruptcy Court reverse both its own prior decision and the state court's prior decision on the same issue without explanation or warning?

6.     Did the Bankruptcy Court err as a matter of law, thereby abusing its discretion, when it took more than five (5) years to adjudicate this adversary proceeding — including, but not limited to its decision to grant the Appellees a seventy-eight (78) day extension to the sixty (60) day, Congressionally-mandated filing deadline and its decision to grant the Appellees a thirty-eight (38) month continuance of the previously-scheduled trial — merely because the Appellees chose not to start discovery until months *after* they had filed their Complaint (Adv.Dkt. #1) and months *after* the trial had been scheduled *at their request*?  Is doing absolutely nothing to investigate a claim "due diligence" sufficient to constitute "cause" for an extension?  Was the Court right to ignore the Appellees'

leisurely pace as extrinsic evidence of their bad-faith?    Likewise, does the Bankruptcy Court's leisurely pace negate the entire rationale for deference to its decision (namely, a desire to expedite litigation)?

7.    If, as the Bankruptcy Court held, discovery's potential to uncover new evidence was sufficient to justify the Appellees' initial allegations, then did the Appellees actually have to conduct reasonable discovery or could they rely upon discovery's potential without bothering to conduct any discovery?   Does the fact that our prior testimony (taken before our bankruptcy filing) fills eleven (11) volumes limit the Appellees' ability to rely upon discovery?  Does the fact that they didn't depose us in this case matter?    Does the fact that they lied about the questions they asked us the 341 meetings matter?   Does the fact that they never deposed anyone - including us - regarding their 727 Claims matter?   Can the Appellees wait to initiate discovery *AFTER* a trial has been scheduled at their request?   Can the Appellees subsequently fail to pick-up the documents that they have requested?  Can the Appellees fail to contact, much less depose, independent the third-party administrator (accountants), auditor, and custodians who actually held and accounted for the Plaintiff's money?  *In short, is turning a blind eye to obviously-vital evidence consistent with good-faith and, thus, non-sanctionable?*

8.    Did the Bankruptcy Court err as a matter of law, thereby abusing its discretion, when it granted the Plaintiff's request for a seventy-eight (78) day extension to the sixty (60) day, Congressionally-mandated filing deadline based

upon the Plaintiff's false testimony and its counsel's unlawful failure to disclose controlling contrary authority?  That is, can a party lie to attain an extension, so long as its complaint has "merit"; or are lying, deception, and fraud unlawful and sanctionable regardless of the merits of the underlying allegations?

9.   Did the Bankruptcy Court err as a matter of law, thereby abusing its discretion, when it allowed the Appellees to litigate this case for more than five (5) years — including, but not limited to its decision to accede to their demand for a ten (10) day trial at which they did not call a single witness who supported any of their allegations — without any evidence based upon the bizarre theory that we had to take the stand to "prove" our innocence, despite 11 volumes of prior testimony? That is, was the Bankruptcy Court correct when it held that the Appellees did *NOT* needlessly and vexatiously prolong this litigation by demanding a trial based solely upon the off chance that we might recant those 11 volumes of prior testimony in some sort of "Perry Mason" moment?

10.   As a matter of law, did the Bankruptcy Court abuse its discretion when it held that threatening to rape and sodomize a woman and/or referring to her husband as a "faggot" is *NOT* evidence of personal antipathy and/or bad-faith?  If, as the Bankruptcy Court has held, that threatening to rape and sodomize a woman and referring to her husband as a "faggot" is neither evidence of discriminatory animus nor evidence of personal animus, then what is it?  Did the Bankruptcy Court have the legal right to reverse both its own and the State court's decision that

those bigoted statements were proof of personal animus, rather than discriminatory animus?  If so, how and why did it reach that conclusion?

11.    In assessing Appellees' knowledge regarding the truth or falsity of their allegations, should the Court have ignored the Appellees' prior testimony, admissions, and documents relating to their actual knowledge and beliefs regarding the truthfulness of their allegations?  Can you sue someone on the off chance that everything you believe is wrong?

12.    Assuming arguendo the Appellees had non-frivolous 523 Claims, why were they entitled to append frivolous 727 Claims?  Was the Bankruptcy Court running some sort of "Buy One, Get One" free promotion on allegations?  Why would their Amended Complaint immunize their original Complaint?

13.    Did the Bankruptcy Court err as a matter of law, thereby abusing its discretion, when it held that motions for sanctions relate only to the merits of the respondents' allegations, not the means used to advance those allegations, and, thus, that the Appellees were legally entitled to fabricate evidence, mislead and deceive the Court, and/or lie with impunity because all's fair in love and litigation?

14.    Did the Bankruptcy Court err as a matter of law, thereby abusing its discretion, when it held that the Appellees were entitled to sue me based upon a factual allegations that they had denied under oath?   In lay terms, was the Bankruptcy Court correct when it held that a party's prior testimony should be ignored in assessing the legality of that party's allegations?  In short, can a party

make allegations they believe to be false merely because discovery might prove their own testimony is erroneous and/or perjurious?   Also, did the Bankruptcy Court correctly ignore the Appellees' subsequent admissions that they were only suing me as leverage against my wife?

15.   Assuming arguendo that the Appellees' 523 Claims were not facially frivolous, did the Bankruptcy Court err as a matter of law, thereby abusing its discretion, when it held that the Appellees were entitled to sue us based upon allegations that they had denied under oath and that were belied by their own documents (including, but not limited to their own Trial Exhibits)?   In lay terms, was the Bankruptcy Court correct when it held that a party's prior testimony and documents should be ignored in assessing the merits of that party's allegations? Did the Bankruptcy Court correctly hold that parties may make allegations that they believe to be false merely because discovery might prove that their own testimony and their own documents are erroneous and/or perjurious?

16.   Did the Bankruptcy Court err as a matter of law, thereby abusing its discretion, when it ruled that *any* complaint that survives a motion to dismiss is therefore non-frivolous even if that complaint only survived because the Appellees fabricated evidence?   Did the Bankruptcy Court err as a matter of law, thereby abusing its discretion, when it allowed these Appellees to base their claims upon their preposterous assertion that they either knew or would discover what our attorneys had told us in our privileged conversations?   How could anyone rebut a

plaintiff's allegations relating to privileged materials without waiving privilege? Can a plaintiff force a defendant to choose between privilege and summary judgment?  In lay terms, can the Appellees defraud the tribunal in order to defeat our dispositive motions *with impunity* merely because their allegations (if true) are not "meritless"?

**WHEREFORE,** we respectfully request this Court reverse the Bankruptcy Court's Order (Adv.Dkt. #350); enter judgment in our favor; award us sanctions sufficient to deter LMF and its attorneys, given their financial resources; and end this case before my family and I suffer any more irreparable harms.

Dated: January 14, 2017                Respectfully submitted,

Christopher Paige
Debtor-Defendant
*Pro Se*
75 78 177th St.
Fresh Meadows, NY 11366
718.591.6355


Michele Paige
Debtor-Defendant
*Pro Se*
75 78 177th St.
Fresh Meadows, NY 11366
718.591.6355

## CERTIFICATE OF SERVICE

Under penalty of perjury, I hereby attest that I served a true and correct copy of the foregoing Amended Statement of Issues - including any exhibits thereto - upon the person(s) identified below on the date provided below via first-class U.S. mail, postage prepaid:

John Goodchild, Esq.
Morgan Lewis
1701 Market St
Philadelphia, PA 19103-2921

Dated: January14, 2017      Respectfully submitted,

Christopher Paige
Debtor-Defendant
*Pro Se*
75 78 177th St.
Fresh Meadows, NY 11366
718.591.6355