IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>CHRISTOPHER PAIGE and<br>MICHELE PAIGE,<br><br>  Debtors | Case No. 3:17-cv-00023-ARC |
| CHRISTOPHER PAIGE,<br>MICHELE PAIGE,<br><br>  Defendants/APPELLANTS<br><br>  vs.<br><br>LMF,<br>MORGAN LEWIS, and<br>JOHN GOODCHILD, ESQ.<br><br>  Plaintiff/APPELLEES | FILED<br>SCRANTON<br><br>SEP 13 2017<br><br>_____<br>DEPUTY CLERK |

**APPELLANTS' NOTICE TO THE COURT
REGARDING YOUR COLLEAGUE JUDGE MATTHEW W. BRANN'S
RECENT DECISION AFFECTING OUR APPEAL**

Last week, your colleague Judge Matthew W. Brann issued an opinion that effectively resolves our appeal in our favor. See <u>Young v. Smith</u>, 3:07-CV-00854 (M.D. Pa. September 6, 2017) (J. Brann). Although I appreciate that there is no "law of the district,"[1] I also realize that you wouldn't want to contradict one (1) of

1

your colleagues merely because you were unaware of his decision, which has garnered a fair amount of media attention.[2] In lay terms, Judge Brann may be wrong, but he's not an idiot whose opinion you should ignore; consequently, his decision is highly relevant, if not legally dispositive, information.

Although I do not intend to inundate this Court with updates, I feel compelled to notify you regarding subsequent developments in the law because I appreciate how busy you are, and I do not assume that you are able to follow these developments as closely as I do. If these updates are either unnecessary or unwelcome, I sincerely apologize, but I am attempting to be candid.

After all, this case is entering its seventh year,[3] so I've been extremely patient by any reasonable standard — particularly given this Court's obligation to expedite such issues. *See, e.g.,* Tr. 1/5/12 (Dkt. #63), p. 13, L: 4 -7 (THE COURT: "But to me, you've got an obligation to show cause because Congress apparently wants these things [dischargeability complaints] disposed of quickly in Chapter 7, you know? **They don't want these things dragged out.**") [emphasis added].

If you, like the lower court in our case, were to suggest that examining adversaries at a hearing constitutes sufficient investigation of a claim to preclude sanctions, then you, like the lower court in our case, would have contradicted a long line of contrary precedent — including your colleague's aforementioned decision.

In discussing the applicable legal standards, your colleague wrote the following:

> "'Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose.' '[T]he rule emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable.' 'The word 'sanctions' in the caption . . . stresses a deterrent orientation in dealing with improper pleadings, motions or other papers.' '[T]he intended goal of Rule 11 is accountability.' 'The standard for testing conduct under Rule 11 is reasonableness under the circumstances.' 'The rule imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.' 'It may be rephrased, 'Stop, Think, Investigate and Research' before filing papers either to initiate a suit or to conduct the litigation.' 'These obligations conform to those practices which responsible lawyers have always employed in vigorously representing their clients while recognizing the court's duty to serve the public efficiently.' 'To comply with these requirements, counsel must conduct 'a reasonable investigation of the facts and a normally competent level of legal research to support the presentation.'"
>
> Young v. Smith, 3:07-CV-00854 (M.D. Pa. September 6, 2017) at 104 - 105 [footnotes omitted] [emphasis added]

Did you notice that your colleague never mentioned anything about hoping something might turn up in discovery? *But cf.* Opinion (Adv.Dkt. #349), p. 4 ("While this was never established at trial, the specific question critical here was whether this allegation was 'likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.'"). What's more likely: that your colleague mis-stated the applicable law or that Judge Thomas did? And why would *discovery* be the "critical" question in a case that went to trial? Once a case

reaches trial, hasn't there — by definition — been "a reasonable opportunity for further investigation or discovery"?

Regardless, would *ANY* reasonable legal theory excuse these Appellees' misconduct in this case? In Judge Brann's case, the non-movant attempted to corroborate other testimony[4] regarding her hourly rate by examining her adversary at a hearing. Id. at p. 13 ["In perhaps the second-strangest portion of the show cause hearing, Ms. Pollick called opposing counsel John E. Freund, III, Esquire as a witness as if on cross examination (a tactic that she repeats endlessly and ineffectively at trial) and proceeded to pepper him with argumentative questions, which he unsurprisingly handled with impugnable professionalism."].

In our case, the non-movants attempted to prove their allegations by examining only three (3) witnesses — my wife, my sister-in-law, and myself — at the trial![5] I guess we're supposed to believe they thought Perry Mason was a documentary! And when did a trial become "an opportunity" for discovery?

Obviously, therefore, Ms. Pollick's conduct in Judge Brann's case was far less culpable than these Appellees' conduct in our case because Ms. Pollick attempted to corroborate other testimony in her favor[6] whereas these Appellees produced no favorable testimony whatsoever.[7] Literally, everyone who testified at trial testified for us; not surprisingly, therefore, we won on a dispositive motion without presenting a defense! *See* Opinion (Adv.Dkt. #303). Likewise, Ms. Pollick had *not* deposed her adversary before the hearing [so she had more cause to

claim she didn't know what he would say] whereas the transcripts of these Appellees' prior examinations of my wife, my sister-in-law, and myself [at depositions, at hearings, and at the previous trial in Delaware] filled *at least* eleven (11) volumes![8]  Thus, if Ms. Pollick's attempt to examine her adversary at a hearing *on a fee application* were insufficient to preclude sanctions — and it was[9] — then our adversaries' attempts to examine us at a trial *on an adversary complaint* were even *MORE* insufficient.

Indeed, these Appellees' misconduct in this case was so brazen that they *literally* answered ready for trial in June 2012;[10] then they made their *first* discovery request one (1) month later on July 11, *2012*[11] [not *2011* as they claimed in support of their Motion to Extend (Dkt. #35)]; and then they cited their belated-discovery request as cause to adjourn the previously-scheduled trial from August 15, 2012,[12] for more than three (3) years until November 4, 2015![13]  Yet, they want you to believe that they *never* misled the Trial Court regarding their "opportunity for further investigation and discovery"!  *See, e.g.*, Lerner Master Fund, LLC v. Paige (In re Paige), 476 B.R. 867, 872 - 873 (Bankr. M.D.Pa. 2012) (citing the Appellees' imaginary 2011 discovery attempts as "cause" for an extension).

Honestly, do you think a federal bankruptcy judge was so stupid that he thought parties could seek an extension first and *THEN* start discovery months later?  Or do you think your colleague did *NOT* understand the relevant facts because the Appellees had lied to him?  *See also* Tr. 3/1/12 (Dkt. #86), p. 79, L: 13

5

- 20 (in which Mr. Goodchild claims to have "personally examined" my wife and I on documents that he subsequently admitted he didn't have[14] and which he later claimed didn't exist[15]).

Quite simply, there's no way to reconcile Judge Brann's decision in Young to the Judge Thomas's in our case, which — quite literally — claims the law is exactly the opposite of Judge Brann's description thereof. That is, Judge Brann devotes pages of his opinion to citing the long line of authorities that hold parties must investigate, then file,[16] but Judge Thomas bizarrely held that parties may file, then investigate.[17]

Risibly, the lower court's position was so extreme that even these Appellees rejected it! *See, e.g.,* LMF's Motion (Adv.Dkt. #194), p. 2 ("Rule 9011 of the Federal Rules of Bankruptcy Procedure does not permit litigants to manufacture incredibly serious accusations of illegal and immoral conduct with no factual support, and then engage in a fishing expedition to find out if any good faith basis for making such allegations happens to exist.").

Indeed, the lower court actually held that investigating allegations is optional, since the Appellees never deposed anyone[18] — including, but not limited to obviously-material eyewitnesses[19]— and since they never bothered to pick-up the documents they had requested![20]

6

Again, do you *really* think another federal judge is so stupid that he sincerely believes discovery is optional, or will you admit the obvious: these Appellees lied to him regarding the timing and nature of their discovery efforts? *See, e.g.,* In re Gioioso, 979 F.2d 956, 961 (3rd Cir. 1992) (when a party lies to defeat dispositive motions, their actions "…compel a conclusion of bad-faith.").

As Judge Brann explained in his decision, this Court must protect both its integrity and the public's confidence therein. *See, e.g.,* Young v. Smith, 3:07-CV-00854 (M.D. Pa. September 6, 2017), p. 136 ("Although holding a hearing and reviewing the pertinent documentation has taken substantial time, my hope is that this time was well spent and that none of my colleagues will deal with such an improper fee petition in the future. This is the result that justice commands—the result that public faith in our judicial system requires.").

Obviously, therefore, you can't issue an opinion in our case that contradicts Judge Brann's opinion in Young v. Smith, 3:07-CV-00854 (M.D. Pa. September 6, 2017) without some sort of explanation. Nor can you hold that Judge Thomas is a moron without, at the very least, discussing the alternative explanation for his otherwise inexplicable decision to permit five (5) years of litigation that culminated in a trial at which the plaintiff didn't call any favorable witnesses: these Appellees lied to Judge Thomas. Once you concede the obvious, you — like your colleague — must reject the Trial Court's erroneous legal standard, and you — like

your colleague — must reject the non-movants' transparently-inadequate "investigation" because Judge Brann *correctly* stated the law governing sanctions.

Quite simply, whatever the theoretical "merits" of these Appellees' allegations on the day they filed, they couldn't keep fighting without evidence from October *2012* (when their discovery efforts ended) until more than four (4) years later on December 29, *2016* (when the lower court entered judgment). *See* LMF's Answer (Adv.Dkt. #183), p. 2, Para 2 ("**By way of further response, LMF has not conducted discovery of the Debtors since October 2012...**") [emphasis in original]; *but cf.* Judgment (Adv.Dkt. #350). Similarly, they weren't entitled to file their Complaint (Adv.Dkt. #1) on February 23, 2012, without attempting discovery until four and a half months later on July 11, 2012. And they certainly weren't allowed to get an extension to the filing deadline by claiming they initiated discovery in 2011, when they really began discovery in 2012.

But don't take my word for the proposition that Judge Thomas *actually* thought courts can't grant an extension where the plaintiff neither conducts pre-deadline discovery nor provides a reason for his or her delay, take another of your colleague's:

> "Moreover, while courts may differ on the precise standard to use when determining cause under Rule 4004(b)(1), they agree on requiring proof of diligence from the movant in investigating the debtor's financial affairs prior to granting an extension. *See In re Paige*, 476 B.R. 867, 872 (Bankr. M.D. Pa. 2012)(citing consensus that no cause exists where lack of diligence and no reason for delay in investigation);...").

8

<u>421 Chestnut Partners, LP v Aloia (In re Aloia)</u> 496 B.R. 366, 380 (Bankr. E.D. Pa July 17, 2013).

I guess you're supposed to think that Judge Thomas's published opinion in our case wasn't meant to apply to the facts of our case, or maybe you're supposed to think that Judge Thomas thought doing nothing without any explanation constitutes due diligence and a reason for delay. Or maybe you're not supposed to care that these Appellees used fraud to attain a published opinion that's being cited by everybody because who cares if published opinions were attained through fraud, right?

The Appellees lied — any other conclusion assumes, and publicly brands, three of your colleagues as liars, lunatics, or fools who, for whatever reason, believe that the law *as described by them* would *NOT* apply to our case for some reason they don't bother to mention. That is, all three jurists mentioned above have all stated apparently universal rules to which our case is allegedly the solitary, but utterly unspecified exception. Supposedly, they all either meant to write — or somehow implicitly wrote — "You've got to conduct reasonable discovery *UNLESS* you're a multi-billionaire represented by Pennsylvania's most prominent law firm suing an innocent, impoverished, *pro se* cancer patient for millions, in which case you can do whatever you want." Really? Our case is the exception? Because a million dollar fee application litigated for months imposes a greater duty of care than a multi-million dollar adversary complaint litigated for years?

Do you *really* believe that your colleague granted these Appellees an extension that required due diligence in 2011 based upon the discovery that they would conduct in 2012? Was your colleague allowing for the possibility of time travel? Or do you think these Appellees lied to him about their discovery efforts? Likewise, do you *really* believe that Rule 11 requires a reasonable investigation **BEFORE** filing unless you're a wealthy, sophisticated plaintiff and his equally-privileged attorneys?

In the final analysis, therefore, this case is just this simple: Judge Thomas's Opinion (Adv.Dkt. #349) defies both the law and the facts because the Appellees lied to him about both the law and the facts. Stripped of its rhetoric, the Appellees' counter-argument is simple: we didn't lie, so everybody else must be crazy, stupid, or dishonest. Really? You'll believe that they were threatening to rape and sodomize us over a business dispute that they claim wouldn't even exist until we started it, but you won't believe that they'd lie to hurt us? *See* Our Hearing Exhibit KK; *but cf.* LMF's Response (Adv. Dkt. #275), Exhibit A, Para. 119 - 130 (repeatedly denying the existence of a dispute prior to March 10, 2010). Because threatening to rape and sodomize people over a *future* business dispute is *normal*? Because threatening to rape and sodomize people over an "imaginary" business dispute is a sign of *good-faith*? Because nothing says "sincerity" and "restraint" like threatening to rape someone you've described as a "faggot" and "cunt"?

**WHEREFORE,** we respectfully request, "...the result that justice commands—the result that public faith in our judicial system requires," — swift and severe sanctions upon these Appellees.

**Dated:** September 11, 2017     Respectfully submitted,

*[signature]*

Christopher Paige
Appellant
*Pro Se*
75 78 177th St.
Fresh Meadows, NY 11366
718.591.6355

*[signature]*

Michele Paige
Appellant
*Pro Se*
75 78 177th St.
Fresh Meadows, NY 11366
718.591.6355

## CERTIFICATE OF SERVICE

Under penalty of perjury, I hereby attest that I served a true and correct copy of the foregoing Update - including any exhibits thereto - upon the person(s) identified below on the date provided below via first-class U.S. mail, postage prepaid:

John Goodchild, Esq.
Morgan Lewis
1701 Market St
Philadelphia, PA 19103-2921

**Dated:** September 11, 2017    Respectfully submitted,

Christopher Paige
Debtor-Defendant
*Pro Se*
75 78 177th St.
Fresh Meadows, NY 11366
718.591.6355

## ENDNOTES

[1] *See, e.g.*, Threadgill v. Armstrong World Industries, Inc., 928 F.2d 1366, 1371 (3rd Cir. 1991) ("First, it is clear that there is no such thing as 'the law of the district.'") [internal citations omitted].

[2] *See, e.g.*, http://www.thelegalintelligencer.com/id=1202797570953/Judge-Slams-Lawyer-Equating-Fee-Request-to-Attempted-Bank-Robbery

[3] This case began on August 29, 2011. *See, e.g.*, Petition (Dkt. #1).

[4] *See, e.g.*, Young v. Smith, 3:07-CV-00854 (M.D. Pa. September 6, 2017) (J. Brann) at p. 14 ("In addition, I was prepared to and did ask Ms. Pollick's sole affiant at the show cause hearing whether he had ever known Ms. Pollick in a personal capacity, as it came to my attention that just last year, one of Ms. Pollick's affiants in a Luzerne County case, Carlo Sabatini, Esquire, had apparently engaged in a romantic relationship with her in the past:....")

[5] *See, e.g.*, Opinion (Adv.Dkt. #303), p. 2 ("In advancing its case, LMF has called both Debtors and the female Debtor's sister as their only witnesses.").

[6] *See, e.g.*, Young v. Smith, 3:07-CV-00854 (M.D. Pa. September 6, 2017) (J. Brann) at p. 14 ("In addition, I was prepared to and did ask Ms. Pollick's sole affiant at the show cause hearing whether he had ever known Ms. Pollick in a personal capacity, as it came to my attention that just last year, one of Ms. Pollick's affiants in a Luzerne County case, Carlo Sabatini, Esquire, had apparently engaged in a romantic relationship with her in the past:....")

[7] *See, e.g.*, Opinion (Adv.Dkt. #303), p. 2 ("In advancing its case, LMF has called both Debtors and the female Debtor's sister as their only witnesses.").

[8] *See, e.g.*, Christopher Paige's Testimony [Tr. 5/19/16 (Adv.Dkt. #328), p. 9, L:18 - p. 10, L: 9].

[9] Young v. Smith, 3:07-CV-00854 (M.D. Pa. September 6, 2017) (J. Brann), p. 136.

[10] Tr. 6/13/12 (Dkt. #130), p. 17, L: 10 - 13 ("THE COURT: I'll do [the trial] any day you want me to -- I mean, if you can agree -- do you care? Do you care, Mr. Goodchild? MR. GOODCHILD: Your Honor, I don't — no."); *and see* Proceeding Memo (Adv.Dkt. #14) ("Order scheduling trial for August 15, 2012 at 10:00 a.m.").

[11] *See, e.g.*, LMF Response (Adv.Dkt. #52), p. 2, Para. 3 ("LMF never requested any discovery whatsoever from us in this case until a few days ago on July 11, 2012. *See* Exhibit A, p.5. Consequently, our response won't even be due until the day before the trial, August 14, 2012. *See* Fed.R.Civ.P.5(b)(2) (C) *and* Fed.R.Civ.P. 6(d) (setting deadline to respond to discovery requests served by mail). **Response: Undisputed.**") [emphasis in original].

[12] *See, e.g.*, Proceeding Memo (Adv.Dkt. #14) ("Order scheduling trial for August 15, 2012 at 10:00 a.m.").

[13] *See, e.g.*, Proceeding Memo (Adv.Dkt. #14) ("Order scheduling trial for August 15, 2012 at 10:00 a.m."); *but cf.* LMF's Motion to Continue (Adv.Dkt. #17); Debtors' Objections (Adv.Dkt. #21 & #34); Court's Order (Adv.Dkt. #45) ("**The Plaintiff's** request to continue August 15, 2012 trial date is granted.") [emphasis added]; Debtors' Motion (Adv.Dkt. #209); LMF's Objection (Adv.Dkt. #225), dated ***August 14, 2015***; *and see* Order (Adv.Dkt. #231).

[14] By and through the counsel of their choice in a voluntary admission made in open court, the Appellees admitted they didn't even request the relevant documents until a year later. *See, e.g.*, Tr. 1/4/16 (Adv.Dkt. #287), p. 191, L: 2 - 11 ("[JOHNS]: And just to -- to be clear just in terms of dates, that was a September 11th, 2011 letter where we told you we had requested copies. [ME]: No. It was 2012 letter. September 2012 you told me that you had requested. It was definitely 2012, and I thought it was September 12th, maybe it September 11th, you could be right on that. And — [JOHNS]: **I think you're right. You corrected me on the year. So, about September 11th, 2012** — [ME]: Yes.") [emphasis added].

[15] Surprisingly, the Appellees subsequently claimed that the documents they supposedly examined us upon did not exit. *See, e.g.*, LMF's Response (Adv.Dkt. #275), Exhibit A, Para. 180 ("**Despite this repeated statement to the contrary during discovery**, Debtors claim to have retained copies of the check stubs for their personal and corporate bank accounts, and provided them to the Trustee.") [emphasis added].

[16] *See* Id. at pp. 103 *et seq.*

[17] *See, e.g.*, Opinion (Adv.Dkt. #349), p. 4 ("While this was never established at trial, the specific question critical here was whether this allegation was 'likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.'").

[18] As you can see from the Appellees' Brief, they don't even claim they deposed anyone; instead, they claim they conducted "written discovery." *See, e.g.,* LMF's Brief (Adv.Dkt. #67), p. 18.

[19] *See, e.g.,* Opinion (Adv.Dkt. #303), p. 11 ("No testimony was offered by the outside auditor charged with reviewing records of the hedge funds. No testimony was offered by the document storage company to whom all corporate records were delivered during the Delaware litigation. No testimony was offered by LMF to whom access was granted during the Delaware litigation.").

[20] *See, e.g.,* Christopher Paige's testimony [Tr. 12/1/15 (Adv.Dkt. #271), p. 6, L: 17 - 19 ("All these transactions that they're asking for are easily accounted for in the records they didn't bother to pick up. So I made a spreadsheet showing the answer."); Id. at p. 18, L: 19 - 21 ("Yes. I produced everything I had. Yes. I'm sorry. I produced everything I had, but you didn't pick it all up."); Id. at p. 68, L: 4 - p. 99, L: 25].

Case 3:17-cv-00022-ARC Document 73 Filed 09/13/17 Page 16 of 16

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.

FROM:
Paige
7578 177 Myr
Fresh Meadows NY 11366

TO: Court Clerk
US District Court, MD of PA
William J Nealon Courthouse
235 N. Washington Avenue
Scranton PA 18503



RECEIVED SCRANTON
SEP 13 2017
PER DEPUTY CLERK

UNITED STATES POSTAL SERVICE®

VISIT US AT USPS.COM®

PRIORITY MAIL
Retail
US POSTAGE PAID
$6.65
18503
1006
PRIORITY MAIL ® 2-Day
C002
Expected Delivery Day: 09/13/2017
USPS TRACKING NUMBER
9505 5154 5739 7254 1091 67

EP14F July 2013