# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER PAIGE and MICHELE PAIGE, <br><br> Appellants, <br><br> v. <br><br> LERNER MASTER FUND, LLC, MORGAN LEWIS & BOCKIUS, and JOHN GOODCHILD, <br><br> Appellees. | NO. 3:17-CV-0023 <br><br> (JUDGE CAPUTO) <br><br> Bankruptcy No. 5-11-bk-05957 <br> Adversary No. 5-12-ap-0067 |

## **MEMORANDUM**

Presently before me is an appeal filed by Christopher Paige ("Mr. Paige") and Michele Paige ("Ms. Paige") (collectively, where appropriate, the "Paiges" or "Appellants") from the December 29, 2016 Order of the United States Bankruptcy Court for the Middle District of Pennsylvania. In the proceedings below, the Bankruptcy Court found in favor of the Paiges on their motion for judgment on partial findings on all counts of the adversary complaint filed by Lerner Master Fund, LLC ("LMF"). The Bankruptcy Court, however, subsequently denied the Paiges' requests that sanctions be imposed against LMF and its counsel, Attorney John C. Goodchild, III ("Mr. Goodchild") and the law firm of Morgan, Lewis & Bockius LLP ("Morgan Lewis") (collectively, where appropriate, "Appellees"). The Paiges appeal the denial of their requests for sanctions, arguing that the Bankruptcy Court abused its discretion in declining to impose sanctions pursuant to 28 U.S.C. § 1927, Federal Rule of Bankruptcy Procedure 9011(b), and/or the Bankruptcy Court's inherent power. The Paiges also appeal various interlocutory decisions of the Bankruptcy Court preceding the denial of their requests for sanctions. Because the Bankruptcy Court did not abuse its discretion in denying the Paiges' motions for sanctions and the Paiges are not entitled to relief on the other issues they raise on appeal, the decision of the

Bankruptcy Court will be affirmed and the Paiges' appeal will be denied.

# I. Background[1]

## A. The Relationship Between the Paiges and LMF.

In May 2006, Ms. Paige left her employment with a large hedge fund to create her own hedge fund (the "Hedge Fund"). *See Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, No. 5502, 2011WL 3505355, at *3 (Del. Ch. Aug. 8, 2011).[2] In the fall of 2007, the Paiges and LMF entered into negotiations for LMF to be the seed investor in the Hedge Fund. *See id*. Ultimately, LMF executed a Seeder Agreement and the Partnership Agreement for the Hedge Fund and invested $40,000,000.00 in same. *See id*. at *4. As part of the Seeder Agreement, LMF agreed to "lock up" its capital in the Hedge Fund for three (3) years in exchange for more favorable investment terms. *See id*. The only other investment in the Hedge Fund was $40,000.00 invested by Ms. Paige. *See id*.

In late 2008, approximately one (1) year into the lock up period established by the Seeder Agreement, employees of LMF met with Ms. Paige on four occasions. *See id*. at *6. After these meetings, LMF began to doubt Ms. Paige's ability to make the Hedge Fund a success. *See id*. At the same time, LMF employees began to exchange internal emails making derogatory comments about Ms. Paige's appearance that were sexual in nature. *See id*. at *6-7.

At a meeting on February 17, 2009, two employees of LMF met with the Paiges to inform the Paiges that it did not intend for the relationship to extend beyond the initial three (3) year period. *See id*. at *8. At that meeting, the Paiges expressed an

---

[1] The litigation history between the Paiges and LMF is extensive and well known to the parties. Accordingly, only those facts necessary to resolution of the instant appeal are set forth in the text.

[2] Both Mr. Paige and Ms. Paige have degrees from Yale Law School. *See Paige Capital Mgmt.*, 2011 WL 3505355, at *3. Ms. Paige, though, appears to have never practiced as an attorney or applied to be a member of a state bar. (*See* Doc. 53, 10:11-24). The Paiges are representing themselves *pro se* in this appeal.

understanding that although LMF wanted to depart the Hedge Fund sooner rather than later, LMF was prepared to stay for the full three (3) year investment period if a mutually agreeable exit plan could not be reached. *See id*. at *8.

In early 2010, LMF offered to pay Ms. Paige the management fee that she would be entitled to collect until the end of the lock up period if it would be allowed to immediately withdraw its capital. *See id*. at *12. About a month later, Ms. Paige provided a proposal allowing LMF to withdraw from the Hedge Fund, but that proposal was unacceptable to LMF. *See id*. As such, on March 11, 2010, LMF provided formal notice of its intention to withdraw all of its capital from the Hedge Fund on October 31, 2010, *i.e.*, the expiration of the three (3) year lock up period. *See id*.

The Paiges responded to LMF's notice of intention to withdraw from the Hedge Fund a few days later, raising for the first time use of a so-called "Gate Provision" of the Partnership Agreement to tie up LMF's investment in the Hedge Fund. *See id*. at *13. This provision provided that the Hedge Fund manager could restrict a withdrawal of capital if it would result in more than twenty percent (20.00%) of the total assets of the Hedge Fund being withdrawn in any six (6) month period. *See id*. at *17.

**B. The Delaware State Court Litigation.**

On May 18, 2010, the Paiges and entities they created filed a complaint in the Delaware Court of Chancery (the "Delaware Litigation") seeking a declaratory judgment that the Gate Provision allowed them to restrict LMF's ability to withdraw all of its capital on October 31, 2010, as well as a declaratory judgment that they were entitled to indemnification from the Hedge Fund for the prosecution of their lawsuit. *See id*. at *14. LMF filed its answer and counterclaims on July 30, 2010, asserting claims for, *inter alia*, breach of contract and breach of fiduciary duty. *See id*. at *15. The Paiges and their entities subsequently filed an amended complaint asserting claims against LMF for defamation and breach of the covenant of good faith and fair dealing.

3

*See id*.

The Delaware Litigation proceeded to trial, following which then-Chancellor and now Delaware Supreme Court Chief Justice Leo E. Strine, Jr. found that Ms. Paige's "refusal to honor the withdrawal request and return the seed investor's capital in full was a violation of the Seeder Agreement and a breach of contract." *Id*. at *2. The Court of Chancery further held that even if the Gate Provision was potentially applicable, "it was a breach of fiduciary duty for the hedge fund manager to use the Gates for a selfish reason." *Id*. Specifically, Ms. Paige's "decision to use the Gates was a selfish one, inimical to the interests of the Fund's 99.9% investor and not intended to, nor needed to, protect the minor investment of the hedge fund manager herself, it was a breach of the duty of loyalty." *Id*. Conversely, though, the breach of fiduciary duty claim was dismissed against Mr. Paige without prejudice, "reserving to the Lerner Fund the right to bring an aiding and abetting or unjust enrichment claim *in the event that* Michele Paige and Paige General Partner do not satisfy the final judgment." *Id*. (emphasis in original).[3]

On August 26, 2011, the Court of Chancery entered judgment, in pertinent part, against Ms. Paige in the amount of $6,568,400.00, plus post-judgment interest, for breach of fiduciary duty. (*See* Doc. 67, 1032a-1035a).

**C.    The Bankruptcy Court Proceedings.**

On August 29, 2011, the Paiges, through counsel Jill Spott ("Ms. Spott"), filed a joint Chapter 7 bankruptcy petition. (*See* Doc. 34, 21-27). The 28 U.S.C. § 341 meeting of creditors was originally scheduled for October 7, 2011, and, as a result, the final day to oppose discharge or dischargeability was December 6, 2011. (*See id*. at

---

[3]    In the Court of Chancery's decision, it observed that email banter between LMF's employees about Ms. Paige's appearance was inappropriate, derogatory, immature, and degrading. *See id*. at *7. Nevertheless, the court rejected the Paiges' contention that the emails were evidence of LMF's personal antipathy to injure Ms. Paige. *See id*.

2). The § 341 meeting was subsequently rescheduled to November 4, 2011, but the meeting did not conclude that day because the Paiges had not submitted images of the cancelled checks of their entities. (*See* Doc. 67, 1043a-1072a). The meeting of creditors was continued until January 6, 2012. (*See* Doc. 34, 4).

On December 1, 2011, LMF filed a motion to extend the time for filing a complaint to determine dischargeability to twenty (20) days after the conclusion of the § 341 meeting. (*See* Doc. 67, 92a-97a). On December 5, 2011, the day before LMF's filing deadline, the Paiges' bankruptcy counsel filed objections to the motion to extend. (*See* Doc. 35, 7). The next day, counsel for the parties filed a joint stipulation to extend time for LMF to file a complaint to dischargeability. (*See* Doc. 67, 98a-99a). Therein, the parties stipulated that if the Bankruptcy Court denied LMF's December 1, 2011 motion to extend the deadline, LMF would still have five (5) days from the date of the denial of that motion to file a complaint to determine dischargeability. (*Id*. at 99a). On December 22, 2011, the Paiges, again through Ms. Spott, filed amended objections to LMF's motion to extend time for filing a complaint to determine dischargeability. (*See* Doc. 35, 7). LMF's counsel subsequently contacted Ms. Spott and learned that the Paiges were unhappy with the December 6, 2011 stipulation. (*See* Doc. 58, 42:15-24, 78:17-79:1).

The § 341 meeting resumed on January 6, 2012, but it was not completed and was further continued until April 6, 2012. (*See* Doc. 35, 8). On February 21, 2012, Ms. Spott filed a withdrawal of appearance and three (3) days later she filed a motion to withdraw as attorney. (*See id*. at 10).

On February 23, 2012, LMF filed its Adversary Complaint. (*See id*.; *see also* Doc. 28, 37-51). The Paiges, proceeding *pro se*, moved to dismiss the Adversary Complaint as untimely on February 29, 2012. (*See id*. at 161-204). Following a hearing, (*see* Doc. 58, *generally*), the Bankruptcy Court granted LMF's motion to extend the filing deadline and denied the Paiges' motion to dismiss the Adversary Complaint on timeliness grounds. (*See* Doc. 29, 1004-1014). In its August 1, 2012

Opinion, the Bankruptcy Court concluded that: (1) the stipulation between Ms. Spott and LMF was enforceable; and (2) "[r]egardless of the enforceability of the joint stipulation," "independent grounds for such an extension exist[ed] under Federal Rule of Bankruptcy Procedure 4007(c)." (*Id.*).

While the Paiges' motion to dismiss the Adversary Complaint as untimely was pending, the Paiges filed a number of "variously titled responses" which the Bankruptcy Court construed as "a loosely phrased Motion to Dismiss under Rule 12." (Doc. 27, 37-9). By Order dated April 1, 2013, the Bankruptcy Court granted the Paiges' motion to dismiss Counts III, IV, and VII of the Adversary Complaint, but granted LMF leave to amend. (*See id.* at 51). The motion to dismiss was otherwise denied. (*See id.*).

LMF filed its Amended Adversary Complaint on April 22, 2013. (*See id.* at 105-306). The Paiges moved to dismiss the Adversary Complaint on May 10, 2013, but the Bankruptcy Court denied that motion on March 31, 2015. (*See* Doc. 24, 955-956). The Paiges were directed to answer the Amended Adversary Complaint, which they did on April 21, 2015. (*See* Doc. 31; *see also* Doc. 32). The same day that the Paiges' motion to dismiss the Adversary Complaint was denied, the Bankruptcy Court also denied pending cross-motions for summary judgment that had been filed by the parties. (*See* Doc. 24, 965-966). The Paiges thereafter filed another dispositive motion, which the Bankruptcy Court denied by Order dated July 27, 2015. (*See id.* at 1257).

The Bankruptcy Court held a pretrial conference on September 9, 2015, (*see* Doc. 52, *generally*), and the trial was scheduled to commence on November 4, 2015. (*See id.*). Following a ten (10) day trial, LMF rested, and the Paiges filed a motion for judgment in their favor on partial findings. (*See* Doc. 16, 1168-1184). The Bankruptcy Court took that motion under advisement. (*See* Doc. 41, *generally*).

On March 11, 2016, the Bankruptcy Court granted the Paiges' motion, finding that LMF failed to meet its burden of proof on any claims set forth in the Amended

Adversary Complaint. (*See id*.). With respect to LMF's claims under 11 U.S.C. § 727(a)(2)(A), the Bankruptcy Court concluded that the record was devoid of evidence that the Paiges acted with the subjective intent to hinder, delay, or defraud LMF. (*See id*. at 1176-1177). The Bankruptcy Court also found LMF's § 727(a)(3) claim failed because there was no evidence that the Paiges "took any affirmative action to cause . . . records not to be available to LMF or the Chapter 7 trustee." (*Id*. at 1178). Regarding LMF's claims to the dischargeability of the debt under § 523(a)(4) and (6), the Bankruptcy Court explained:

> Michele's refusal to turn over the total fund to LMF at the end of a three year lock up was primarily motivated by her rather selfish desire that the hedge funds not be dissipated. While the fund remained under her control, she would continue to utilize it to fund expenses including her own income. This was the essential reason why the Delaware Court held her liable for breach of fiduciary responsibility. It was apparent, however, that Michele was not motivated by some malicious motive such as theft of funds, fraud on the principal, or some false pretense. She, rightly or wrongly, relied on a contractual provision allowing her company to "gate" the withdrawal so that only 20% of the investment could be withdrawn each year. This procedure has been recognized as a device to protect fund managers, not the investors. Tr. # 261 at 154. It so happens that LMF was by far the only significant investor and by acting in her own self interest and not that of the client, the Delaware Court found that Michele Paige breached her fiduciary responsibility. Nevertheless, on advice of counsel, both Christopher and an outside attorney, she did rely upon the terms of a contract between the parties in refusing to turn over the investment at the end of the three year "lock up." On examination, Christopher Paige opined, without challenge, that a hedge fund was a compensation vehicle for its manager. It was "a way of hiring an investor [sic] that you couldn't afford to pay a salary."
>
> It has been said that adherence to a contract does not violate a duty of good faith. *See, for example*, *Creeger Brick & Bldg. Supply Inc. v. Mid–State Bank & Trust Co.*, 385 Pa.Super. 30, 560 A.2d 151, 154 (1989). Furthermore, a review of the rather detailed Delaware Court decision reinforces the conclusion that the issues litigated between the parties were certainly intense and acrimonious, but they turned on contractual provisions and not reckless or fraudulent conduct.
>
> It should go without saying that unless Count I could be established against Michele Paige, then Count III alleging

7

> that Christopher "aided and abetted" her would also come up short. I find that LMF has failed to meet its burden of proof.
>
> Turning to Counts II and IV alleging willful and malicious injury to LMF, I find that LMF failed to present evidence to support that argument. There is no lack of case law interpreting the meaning of § 523(a)(6). Debts arising from professional malpractice will not be considered "willful and malicious." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977, 140 L. Ed. 2d 90 (1998); *In re Conte*, 33 F.3d 303 (3rd Cir. 1994). Even intentional breaches of contract do not amount to willful and malicious injury. *Lockerby v. Sierra*, 535 F.3d 1038 (9th Cir. 2008) ("Expanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to start afresh.") *Id*. at 1042.
>
> Succinctly, LMF has simply not met its burden of proof in this Complaint, and a ruling is required in favor of the Debtors.

(*Id*. at 1181-1183). The Bankruptcy Court deferred entering a final judgment in favor of the Paiges at that time, however, because pending before it remained multiple motions for sanctions that the Paiges had filed against LMF, Mr. Goodchild and Morgan Lewis during the pendency of the bankruptcy proceedings. (*See id*. at 1183).

In connection with their motions for sanctions, the Paiges twice sought to depose Mr. Goodchild. (*See* Doc. 27, 307-340; Doc. 16, 589-625). The Paiges also sought a court order requiring LMF and its counsel to respond to the Paiges' interrogatories, requests for admissions, and document production requests. (*See* Doc. 16, 589-625). The Bankruptcy Court denied those discovery requests. (*See* Doc. 24, 1257; Doc. 16, 1206-1209; *see also* Doc. 40, *generally*).

The Bankruptcy Court held a four (4) day evidentiary hearing on the Paiges' sanctions motions. (*See* Docs. 36-39, *generally*). The Paiges presented the testimony of their former bankruptcy counsel, Ms. Spott, the appointed attorney for the Chapter 7 Trustee, the Chapter 7 Trustee, and Mr. Paige in support of their requests for sanctions. (*See id*.). LMF did not call any of its own witnesses in opposition. (*See* Doc. 36, 57:21-24). The parties filed post-hearing submissions on the Paiges' requests for sanctions. (*See* Doc. 15, 37-394, 448-500).

The Bankruptcy Court denied the motions for sanctions on December 29, 2016. (*See id*. at 519-536). With respect to the requests for sanctions under 28 U.S.C. § 1927, the Bankruptcy Court found: (1) "at the time of the initial Complaint, LMF had quite sufficient reason to argue that Michele Paige should not be discharged from her obligation to LMF"; (2) "[i]t was certainly conceivable that LMF might have been able to fashion some sort of feasible argument supporting liability by both Paiges either on a conspiracy theory . . . or a participation theory"; (3) that despite the "chain of tasteless emails among LMF associates," there was no "evidence in this trial of a personal antipathy against the Paiges"; and (4) that the pre-state court litigation emails were not evidence of bad faith and "LMF counsel had been no more than zealous and well-intentioned" in the bankruptcy proceedings. (*Id*. at 519-524).

The Bankruptcy Court further found sanctions under Bankruptcy Rule 9011 unwarranted. (*See id*. at 524-525). In rejecting the Paiges' argument that "the allegations in the Amended Complaint [had] no basis in fact and law and that counsel violated Rule 9011 by filing and later pursuing the Complaint against them," the Bankruptcy Court explained:

> I again turn to the lengthy Delaware State Court Opinion which outlines an intricate strategy by the Paige enterprises to prevent LMF from accessing its funds. The fact that the evidentiary record of the proceeding before me did not support the conclusion that any debts owing LMF were nondischargeable is of no moment since, a failure to prevail does not "trigger" a Rule 11 violation. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3rd Cir. 1987). The allegations in the Amended Complaint appeared likely to have evidentiary support when filed and later advocated.
>
> It is clear that this was not a case where a creditor lost in state court and then attempted to pursue a claim in bankruptcy court. *Landon v. Hunt*, 977 F.2d 829 (3rd Cir. 1992). LMF successfully prosecuted its claim against Michele Paige and was strongly encouraged by the Delaware Court to pursue a claim against Christopher Paige should its judgment not be paid. There simply is no basis for finding liability under Rule 9011.

(*Id*. at 525).

Lastly, the Bankruptcy Court rejected the Paiges' request to sanction LMF and

9

its counsel pursuant to its inherent power. (*See id.* at 525-527). Use of that power was not appropriate, according to the Bankruptcy Court, because: (1) LMF "at all times, acted professionally in court proceedings"; (2) since the Amended Adversary Complaint "did not violate the Rule 9011 standard of objective reasonableness [it], therefore, by definition was not in bad faith"; and (3) that sanctions are warranted for "vexatious proceedings, but not weak cases." (*Id.* at 526).

As such, by Order dated December 29, 2016, the Bankruptcy Court entered judgment in favor of Mr. Paige and Ms. Paige and against LMF, but denied the Paiges' requests for sanctions. (*See id.* at 537).

## D. The Instant Appeal.

The Paiges timely filed a Notice of Appeal to this Court of the Bankruptcy Court's December 29, 2016 Order. (*See* Doc. 1, *generally*). The Paiges subsequently submitted an Amended Statement of Issues for Appeal consisting of sixteen (16) paragraphs, each containing multiple questions. (*See* Doc. 4, *generally*). While the Paiges appear to challenge virtually every adverse ruling of the Bankruptcy Court, (*see* Doc. 1, *generally*; Doc. 4, *generally*), the issues raised on appeal loosely assign error to: (1) the Bankruptcy Court's finding as to the timeliness of the Adversary Complaint; (2) the Bankruptcy Court's resolution of discovery and evidentiary issues pertaining to the motions for sanctions; and (3) the Bankruptcy Court's ultimate decision denying the requests for sanctions. (*See* Doc. 6, A-27).

The Paiges submitted their opening brief in support of their appeal on January 17, 2017. (*See* Doc. 6, *generally*). On February 13, 2017, LMF filed its appellee brief. (*See* Doc. 67, *generally*).[4] The Paiges' reply brief in further support of their appeal

---

[4] LMF indicates that its Appellee brief is also submitted on behalf of Mr. Goodchild and Morgan Lewis to the extent they are proper appellees in this matter. (*See* Doc. 67, 9 n.1). The Paiges in response to the Appellee brief filed a notice of mootness and a motion to strike and/or force amendment to that brief on the basis that the brief was not signed or filed on behalf of Mr. Goodchild or Morgan Lewis. (*See* Doc. 69, *generally*). However, as the docket reflects, the Appellee

was filed on February 27, 2017. (*See* Doc. 69, 14-60). This appeal is now fully briefed and ripe for disposition.

## II. Discussion

As stated, the Paiges generally contend that: (1) the Bankruptcy Court erred in its disposition of LMF's motion to extend time to file the Adversary Complaint; (2) the Bankruptcy Court wrongly ruled on discovery and evidentiary issues relating to their motions for sanctions; and (3) the Bankruptcy Court abused its discretion in declining to sanction LMF, Mr. Goodchild, and/or Morgan Lewis. I will address each of these contentions in turn.

**A.    The Motion to Extend.**

Based on the initial scheduling of the § 341 meeting of creditors, the last day for LMF to file its Adversary Complaint was December 6, 2011. (*See* Doc. 34, 2). As the § 341 meeting was not concluded by this date, LMF, on December 1, 2011, five (5) days before its complaint was due, filed a motion to extend the time for filing a complaint to determine dischargeability to twenty (20) days after the conclusion of the § 341 meeting. (*See* Doc. 67, 92a-97a). Thereafter, LMF and Ms. Spott entered into a stipulation providing that if the Bankruptcy Court denied LMF's December 1, 2011 motion to extend the deadline, LMF would still have five (5) days from the date of the denial of that motion to file a complaint to determine dischargeability. (*See* Doc. 67, 98a-99a). LMF, though, subsequently learned from Ms. Spott that the Paiges were unhappy with the December 6, 2011 stipulation. (*See* Doc. 65, 42:15-24, 78:17-79:1). A few days after learning that Ms. Spott no longer represented the Paiges, LMF, while its motion to extend was still pending, filed its Adversary Complaint, (*see* Doc. 35, 10; *see also* Doc. 28, 37-51), which the Paiges moved to dismiss on timeliness grounds. (*See id*. at 161-204). The Bankruptcy Court held a hearing on the motion to extend

---

brief was submitted electronically on behalf of LMF, Mr. Goodchild, and Morgan Lewis. (*See* docket, *generally*). The Paiges' motion will thus be denied.

and the timeliness of the Adversary Complaint. (*See* Doc. 58, *generally*). Following the hearing, the Bankruptcy Court granted the motion to extend, concluding that: (1) the stipulation between Ms. Spott and LMF was enforceable; and (2) "[r]egardless of the enforceability of the joint stipulation," "independent grounds for such an extension exist[ed] under Federal Rule of Bankruptcy Procedure 4007(c)." (*See* Doc. 29, 1004-1014). The Paiges challenge this ruling on appeal. (*See* Doc. 6, A-12, ¶¶ 6, 8; *see id*. at 1-2).

Bankruptcy Rule 4007(c) states that a complaint to determine the dischargeability of particular debts under § 523(c) of the Bankruptcy Code "shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4007(c). Rule 4007(c) further provides that "[o]n motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired." *Id*. This rule "unambiguously requires that a motion for an extension of time 'shall be filed before the time has expired.' Reference to 'the time' in this passage is clearly a reference to the date fixed for the filing of a complaint." *In re Weinberg*, 197 F. App'x 182, 185 (3d Cir. 2006).

The Paiges argue that the Bankruptcy Court's determination to grant LMF's motion to extend time to file its Adversary Complaint was in violation of *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 130 F.2d 185, 187 (3d Cir. 1942), wherein the Third Circuit stated that "there exists a sound policy for denying litigants the privilege of enlarging time for pleading by mere stipulation," and that the Federal Rules of Civil Procedure "require court approval to make effective such stipulations . . . ." Here, the Bankruptcy Court properly concluded that regardless of the enforceability of the stipulation between Ms. Spott and LMF to extend the time to file the Adversary Complaint, extension of time for LMF to file its complaint was warranted under Rule 4007(c). (*See* Doc. 29, 1009-1011). In other words, irrespective of whether the stipulation at issue was valid pursuant to *Orange Theatre*, independent

grounds existed for granting such an extension. (*See id*.).

Moreover, the Bankruptcy Court did not err in concluding that LMF satisfied the requirements of Rule 4007(c). The record, including the testimony presented at the hearing on LMF's motion to extend, provided ample cause for the Bankruptcy Court to conclude that an extension of time was appropriate under Rule 4007(c). The Bankruptcy Court's disposition of that motion will not be disturbed.

**B.     The Discovery and Evidentiary Rulings.**

Before and during the four day evidentiary hearing on the Paiges' requests for sanctions, the Bankruptcy Court made a number of discovery and evidentiary rulings which the Paiges challenge on appeal. (*See*, *e.g.*, Doc. 15, 515-517; Doc. 37, 122:8-123:4, 125:16-23, 128:14-21; Doc. 24, 1257; Doc. 16, 1206-1209; *see also* Doc. 40, 57:1-4).

First, the Paiges contend that the Bankruptcy Court erred by denying its request for discovery of LMF and its counsel in support of its motions for sanctions. (*See* Doc. 6, A-11, ¶ 5; *see id*. at 7). A bankruptcy court's decision concerning the scope or opportunity for discovery is reviewed for an abuse of discretion. *See In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 323 (3d Cir. 2003) (citing *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000)).

The advisory committee notes to Federal Rule of Civil Procedure 11 make clear that discovery in support of sanctions motions "should be conducted only by leave of the court, and then only in extraordinary circumstances." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment.[5] "Courts, therefore, rarely grant discovery requests relating to motions for sanctions." *Hall v. Forest River, Inc.*, No. 04-259, 2007 WL 2349620, at *1 (N.D. Ind. Aug. 15, 2007); *see also Indianapolis Colts v. Mayor & City Council of Baltimore*, 775 F.2d 177, 183 (7th Cir.1985). Further, a

---

[5]     Bankruptcy Rule 9011 is the equivalent sanctions rule to Federal Rule of Civil Procedure 11, and, as such, cases decided pursuant to Rule 11 also apply to Rule 9011. *In re Miller*, 730 F.3d 198, 204 (3d Cir. 2013).

13

"deposition of opposing counsel is not encouraged and typically permitted only where a clear need is shown." *Robinson v. Hicks*, No. 07-1751, 2009 WL 1140093, at *2 n.4 (M.D. Pa. Apr. 28, 2009).

Given these principles, the Bankruptcy Court did not abuse its discretion in denying the Paiges' discovery requests. Here, the record is devoid of evidence of "extraordinary circumstances" suggesting that discovery in support of the sanctions motion was appropriate. Similarly absent from the record is any "clear need" for the deposition of Mr. Goodchild to have been compelled. In these circumstances, the Bankruptcy Court cannot be said to have abused its discretion in denying the sanctions-related discovery requests. (*See* Doc. 40, 57:1-4).

Second, the Paiges contend that the Bankruptcy Court erroneously ruled on evidentiary issues during the hearing on the motions for sanctions. (*See* Doc. 6, A-10; *see id*. at 31-33). More particularly, the Paiges claim that the Bankruptcy Court should have admitted the emails between LMF employees that were produced during the Delaware Litigation. (*See* Doc. 6, 31-33). The Paiges also argue that the Bankruptcy Court wrongly admitted settlement negotiation letters that were offered by LMF. (*See id*. at A-10).

The Bankruptcy Court's evidentiary rulings are reviewed for an abuse of discretion. *See, e.g.*, *In re Hernandez*, 860 F.3d 591, 601 (8th Cir. 2017). "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d. Cir. 1999).

Here, the Bankruptcy Court did not abuse its discretion in ruling on the admissibility of the settlement negotiations or the derogatory emails. With respect to the settlement communications, the Bankruptcy Court properly overruled the Paiges' objections thereto because those communications were offered to rebut the claim that LMF unduly delayed the bankruptcy proceedings. (*See* Doc. 37, 122:8-123:4, 125:16-23, 128:14-21); *see also* Fed. R. Evid. 408(b) (evidence of compromise offers and

14

negotiations may be admitted "for another purpose, such as . . . negating a contention of undue delay . . ."). Similarly, the Bankruptcy Court did not abuse its discretion in refusing to admit the email communications between LMF employees regarding the Paiges. (*See* Doc. 15, 515-517). The Bankruptcy Court ruled that those emails were not relevant to the Paiges' requests for sanctions because, *inter alia*, they were not prepared by LMF during the pendency of the bankruptcy proceeding, they were not sent by LMF's counsel in this proceeding, and there was no evidence connecting these emails pre-dating the Delaware Litigation to LMF's decision to file the Adversary Complaint and continue to litigate the adversary proceeding. (*See id.*; *see also* Doc. 15, 412). This decision was not an abuse of the Bankruptcy Court's discretion.

**C.  The Motion for Sanctions.**

The heart of the instant appeal raises a number of challenges to the Bankruptcy Court's ultimate decision to deny the motions for sanctions. (*See* Doc. 6, A-8-A-16). As previously stated, the Bankruptcy Court found that sanctions were not warranted under § 1927, Rule 9011(b), and/or its inherent sanction power. (*See* Doc. 15, 519-537). The denial of the Paiges' motions for sanctions, for the reasons explained below, will be affirmed.

"The imposition or denial of sanctions is subject to abuse-of-discretion review." *In re Miller*, 730 F.3d at 203. The reviewing court does "not seek to determine whether [it] would have applied the sanction [itself] in the first instance." *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223 (3d Cir.1995).

The Bankruptcy Court did not abuse its discretion in denying the Paiges' request for sanctions pursuant to 28 U.S.C. § 1927. That section states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

15

28 U.S.C. § 1927. To impose sanctions under § 1927, a court must find that an attorney has "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002).

Here, the Bankruptcy Court correctly applied the law in disposing of the Paiges' requests for sanctions pursuant to § 1927. (*See* Doc. 15, 519-524). And, in applying that law to the facts of this case, the Bankruptcy Court did not abuse its discretion in concluding that the Adversary Complaint as originally filed was not frivolous or meritless. (*See id*.). Moreover, the Bankruptcy Court did not abuse its discretion in finding an absence of bad faith in the record and rejecting the contention that the inappropriate emails by LMF associates were not dispositive on any issues in the bankruptcy proceedings. (*See id*.). Indeed, there is nothing in the record to rebut the Bankruptcy Court's finding that "[i]n th[e] bankruptcy litigation, LMF counsel has been no more than zealous and well-intentioned." (*Id*. at 524).

The Bankruptcy Court's denial of sanctions under Rule 9011(b) was also not an abuse of discretion. (*See id*. at 524-525). Rule 9011(b) provides:

> (b) Representations to the court
>
> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[ ]
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity

> for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bank. P. 9011(b) (footnote omitted).

> The concern of Rule 9011 is not the truth or falsity of the representation in itself, but rather whether the party making the representation reasonably believed it at the time to have evidentiary support. In determining whether a party has violated Rule 9011, the court need not find that a party who makes a false representation to the court acted in bad faith.

*In re Taylor*, 655 F.3d 274, 282 (3d Cir.2011). The imposition of such sanctions "requires only a showing of objectively unreasonable conduct." *Fellheimer*, 57 F.3d at 1225.

The Bankruptcy Court did not abuse its discretion in rejecting the argument that "the allegations made in the Amended Complaint [had] no basis in fact or law and that counsel violated Rule 9011 by filing and later pursuing that Complaint against them." (Doc. 15, 525). Based on the outcome of the Delaware Litigation and the findings of the Court of Chancery therein, the Bankruptcy Court rightly found that LMF's allegations in the Amended Adversary Complaint "appeared likely to have evidentiary support when filed and later advocated," especially in light of LMF's success against Ms. Paige in the Delaware Litigation. (*Id.*). Based on the record, I am unable to find that the Bankruptcy Court abused its discretion in determining that Rule 9011(b) sanctions were not warranted based on LMF's commencement of adversary proceedings against the Paiges or LMF's advancement through trial of the claims set forth in the Amended Adversary Complaint.

Lastly, the Bankruptcy Court's refusal to impose sanctions pursuant to its inherent power was not an abuse of discretion. (*See* Doc. 15, 525-527). A bankruptcy court has inherent sanction power. *See Fellheimer*, 57 F.3d at 1227. Use of a court's inherent sanction power may be appropriate "where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *In re Prudential*, 278 F.3d at 189

(quotation and citation omitted). "Because of their very potency, inherent powers must be exercised with restraint and caution." *Id*. Accordingly, "a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Id*.

Denial of sanctions pursuant to the court's inherent power was not an abuse of the Bankruptcy Court's discretion. The Bankruptcy Court found that as the Amended Adversary Complaint was objectively reasonable, the claims were not brought in bad faith. (*See* Doc. 15, 526). Likewise, the Bankruptcy Court explained that there was no basis to impose sanctions on LMF for its counsel's conduct at trial because its "behavior through the course of the proceedings was quite restrained." (*Id*.). Nothing in the record suggests an abuse of discretion in this finding. Lastly, the Bankruptcy Court rejected the Paiges' request to impose sanctions on LMF for its pursuit of a "weak" case through trial because sanctions are appropriate for "vexatious proceedings, but not weak cases." (*Id*.). As found by the Bankruptcy Court, the record does not support the use of the Court's inherent sanction power on the facts and proceedings of this case. Thus, the Bankruptcy Court did not abuse its discretion in declining to impose sanctions against LMF based on its inherent power.

The Paiges raise a number of issues with respect to the Bankruptcy Court's denial of their requests for sanctions under § 1927, Rule 9011(b), and/or its inherent sanction power. (*See* Doc. 6, 1-38). First, the Paiges essentially contend that sanctions were appropriate because LMF unnecessarily delayed and stalled the litigation process resulting in the adversary proceedings lasting nearly five (5) years. (*See id*. at 10-11). There is nothing in the record to support the imposition of sanctions for the length of these proceedings, nor is there any evidence that LMF unreasonably multiplied the proceedings. (*See* Doc. 15, 523-524). Second, the Paiges argue that sanctions were appropriate because of Appellees' conduct throughout the adversary proceedings, which included making false representations to prosecute claims Appellees knew to be false. (*See* Doc. 6, 14-20, 23-24, 28-29). The Paiges'

characterization of the proceedings, though, is not supported by the record and I am unable to find that LMF or its counsel made any false representations or prosecuted false claims before the Bankruptcy Court. (*See* Doc. 15, 520). Third, the Paiges maintain that the Bankruptcy Court incorrectly construed their requests for sanctions by considering only the reasonableness of the Adversary Complaint when filed without addressing LMF's counsel's subsequent conduct in investigating and advancing those claims. (*See* Doc. 6, 24-27). That argument is without merit given the Bankruptcy Court's sanction opinion noting that the Paiges claimed that LMF "violated Rule 9011 by filing and *later pursuing* that Complaint . . . ." (Doc. 15, 525 (emphasis added); *see also id*. (LMF's allegations "appeared likely to have evidentiary support when filed and *later advocated*."); *id*. at 526 (addressing the essence of the Paiges' claim that "LMF *advanced* the Complaint with as weak a case as it manifested at trial.")). Finally, the Paiges challenge the Bankruptcy Court's conclusion that the email communications between LMF's associates did not justify imposing sanctions against LMF or its counsel. (*See* Doc. 6, 30-31). The Bankruptcy Court did not abuse its discretion in finding that those communications were not dispositive of any issue in the adversary proceeding. (*See* Doc. 15, 523). In short, the Paiges in the instant appeal simply fail to identify any abuse of discretion by the Bankruptcy Court in denying the requests for sanctions.

### III. Conclusion

For the above stated reasons, the judgment of the Bankruptcy Court will be affirmed.

An appropriate order follows.

January 12, 2018  
Date

/s/ A. Richard Caputo  
A. Richard Caputo  
United States District Judge